UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

ASSOCIATED MORTGAGE BANKERS, INC.,

                              Plaintiff,

          -against-

CALCON MUTUAL MORTGAGE LLC, doing
business as One Trust Home Loans, ARLENE
BALTAZAR, MATHEW DLUGOLENSKI,
JOSHUA ERSKINE, SHANE ERSKINE,
MATHEW GLYNN, JOSEPH TAKO,
ROSEMERE INVESTMENTS LLC, JOHN AND
JANE DOES 1 THROUGH 100, JOHN DOE
CORPORATIONS 1 THROUGH 10, and JOHN
DOE ENTITIES 1 THROUGH 10,

                              Defendants.

----------------------------------------------------------------x

CALCON MUTUAL MORTGAGE LLC d/b/a
ONE TRUST HOME LOANS,

                              Counterclaimant,

          -against-

ASSOCIATED MORTGAGE BANKERS, INC.,
DONALD MORAN, ADAM SALTI, MAX
KANE, and ROES 1 THROUGH 50,

                              Third Party Defendants.

----------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
13-cv-05927 (ADS)(AKT)

## APPEARANCES:

**Gordon & Rees LLP**
*Co-Counsel for the Plaintiff/Counterclaim Defendant Associated Mortgage Bankers, Inc.*
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
          By:     Peter G. Siachos, Esq.
                  JoAnna Marie Doherty, Esq.
                  Stacey Lee Trien, Esq., Of Counsel

1

**Lewis Brisbois Bisgaard & Smith LLP**
*Co-Counsel for the Plaintiff/Counterclaim Defendant Associated Mortgage Bankers, Inc.*
77 Water St
21st Floor
New York, NY 10005
      By:    Brian Pete, Esq.
             Jeffrey Spiegel, Esq., Of Counsel

**Giskan Solotaroff Anderson & Stewart LLP**
*Attorneys for the Defendants*
11 Broadway, Suite 2150
New York, NY 10004
      By:    Jason L. Solotaroff, Esq.
             Aliaksandra Ramanenka, Esq., Of Counsel

**Law Office of Brendan Chao, Esq.**
*Attorney for the Third-Party Defendant Donald Moran*
50 Merrick Road
Rockville Centre, NY 11570
      By:    Brendan Chao, Esq.

**Valli & Kane, LLP**
*Attorneys for the Third-Party Defendants Adam Salti and Max Kane*
600 Old Country Road, Suite 207
Garden City, NY 11530
      By:    Robert John Valli, Jr., Esq., Of Counsel

**SPATT, District Judge.**

This action arises from a dispute over a contract that rescinded a merger between two corporate entities, the Plaintiff Associated Mortgage Bankers, Inc. ("AMB") and the Defendant CalCon Mutual Mortgage LLC, doing business as One Trust Home Loans ("CalCon"). The Plaintiff alleged claims against CalCon's principals, as well as some of its employees and shareholders. CalCon asserted counterclaims against AMB, and filed third party claims against AMB's principals.

Presently before the Court are four motions: a motion by the Defendant Rosemere Investments LLC ("Rosemere"), one of CalCon's shareholders, for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c); a motion by AMB

2

to dismiss two of CalCon's counterclaims against it pursuant to Rule 12(b)(6); a motion by third-party Defendant Adam Salti ("Salti"), one of AMB's principals, to dismiss CalCon's claims against him pursuant to Rule 12(b)(6); and a motion by third-party Defendant Donald Moran ("Moran"), another one of AMB's principals, to dismiss CalCon's claims against him pursuant to Rule 12(b)(6). For the reasons discussed below, the Court grants Rosemere's and AMB's motions in their entirety; grants in part and denies in part Salti's motion to dismiss; and denies Moran's motion to dismiss in its entirety.

## I. BACKGROUND

### A. The Relevant Facts

As the Court will discuss below, the Court is required to view the facts in the light most favorable to the non-movant for each of the four motions before the Court. Therefore, the Court examines the facts from two points of view: 1) in the light most favorable to AMB for the purposes of Rosmere's motion for a judgment on the pleadings pursuant to Rule 12(c); and 2) in the light most favorable to CalCon for the purposes of the various motions to dismiss its claims.

#### 1. The Relevant Facts Construed in the Light Most Favorable to AMB

The Court previously detailed the facts that AMB alleged in its second amended complaint in *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, (E.D.N.Y. 2016) (Spatt, J.). The Court will reiterate some of those facts here.

Unless otherwise stated, the following facts are drawn from AMB's second amended complaint (SAC) and, for the purposes of Rosemere's motion for a judgment on the pleadings pursuant to Rule 12(c), are construed in the light most favorable to AMB.

On December 1, 2011, AMB and CalCon merged their operations by way of a stock purchase agreement. AMB is a "small New York bank that specializes in home mortgages."

CalCon is a foreign limited liability company that operates as a mortgage broker. Rosemere Investments, LLC ("Rosemere") is a Delaware limited liability corporation that is a shareholder and a member of CalCon. Joshua Erskine is the Chief Executive Officer (the "CEO") of CalCon. Shane Erskine is the Chief Operating Officer (the "COO") of CalCon.

CalCon and AMB operated as a merged entity for one year. During that time, among other aims, the companies worked to expand their operations in west coast offices located in California, Hawaii, Wyoming, Colorado, Utah and Nevada (the "West Coast Operations"). However, on January 8, 2013, CalCon and AMB entered into a Rescission Agreement due to disagreements. The Rescission Agreement contained various provisions that dictated the winding down and separating of business. During the winding down period, which lasted from January 8, 2013 until June 30, 2013, AMB funded and serviced loans that originated while AMB and CalCon were a singular entity. These loans were made in various locations throughout the west coast.

AMB alleges that although the Rescission Agreement provided that AMB would receive the profits from those west coast loans, CalCon instead took the profits by 1) misrepresenting to prospective borrowers that AMB was declining to fund west coast loans; 2) accessing AMB's loan processing software to "monitor and manage the west coast [] loans;" and 3) transferring 94% of the west coast loans, valued at $51 million, from the merged singular entity to CalCon.

AMB's allegations against Rosemere consist of three paragraphs. The allegations say that:

> Rosemere is a Delaware limited liability corporation that is, upon information and belief, a [CalCon] shareholder or member. Upon information and belief, Rosemere is located [in California]. . . . Upon information and belief, Rosemere, a majority shareholder of [CalCon], knew of and condoned CCMMC's interference with AMB's relationship with the individuals seeking to close on the West Coast [] Loans. . . . Upon information and belief, Rosemere, a majority shareholder of [CalCon] knew of and condoned [CalCon]'s interference with AMB's relationship with the individuals seeking to close on the West Coast [] Loans."

(*Id.* at ¶¶ 19, 116, 125).

### 2. The Relevant Facts in the Light Most Favorable to CalCon

Unless otherwise stated, the following facts are drawn from CalCon's Third Amended Counterclaims Against AMB and Third Party Claims Against Donald Moran and Adam Salti (together, "CalCon's Counterclaims"), and are accepted as true for the purposes of the motions to dismiss its claims.

#### a. The Parties

CalCon is a California limited liability company and its principal place of business is in San Diego, California. AMB is a New York corporation with a principal place of business in New York State. Donald Moran ("Moran") and Adam Salti ("Salti") were officers of AMB during the relevant period.

#### b. The Merger Agreement

On or about December 12, 2011, AMB and CalCon entered into a Merger Agreement. As a result of the Merger Agreement, CalCon surrendered all of its mortgage licenses; CalCon employees became AMB employees; CalCon loans were closed in the name of AMB; CalCon's physical offices were either assigned or subleased to AMB; and the companies' respective websites were changed to reflect the merger.

After approximately twelve months, AMB and CalCon decided to unwind the merger due to "differences and concerns." CalCon alleges that they were concerned by legal investigations into AMB's activities.

The parties agreed to rescind the merger, and on January 8, 2013, the Rescission Agreement went into effect. The Rescission Agreement voided all prior agreements between AMB and CalCon. The Rescission Agreement was executed between CalCon and its principals Joshua Erskine and Shane Erskine on one hand, and AMB and its principals Moran and Salti on the other.

5

However, Salti was only a party to certain portions of the Rescission Agreement; namely, the non-disparagement section and the mutual release and indemnity section.

### c. The Rescission Agreement

CalCon alleges that the parties' intent was to 1) cease all cooperative business operations except those in the Rescission Agreement; 2) transition certain employees from AMB to CalCon; 3) transfer all West Coast Operations assets from AMB to CalCon except for AMB's reverse mortgage business; and 4) permit CalCon to grow during the transition period.

CalCon says that the separation was delayed for several reasons: CalCon needed to reapply for the licenses that it had surrendered pursuant to the Merger Agreement; the parties had to work with landlords to transfer the office leases for the West Coast Operations and related assets; and transferring the Transition Employees required time and patience in order to maintain client relationships and the existing business.

During the Transition Period the parties were obligated "to take various actions to restore the parties to their pre-sale status as nearly as possible on the terms and conditions set forth in the agreement." It further provided that the parties would use their best efforts and work in good faith to transfer the West Coast Operations to CalCon.

The Rescission Agreement also allegedly contained a non-disparagement clause which stated that "no parties would engage in disparaging conduct, including but not limited to making professionally or personally disparaging negative and false statements, which are intended to or actually do damage the good will of, or the business or personal reputations of, the other."

The Court notes that neither AMB nor CalCon attached the Rescission Agreement to their respective complaints.

### d. Alleged Wrongful Acts of AMB and its Principals

CalCon alleges that AMB and its principals committed a series of acts that were either tortious or that breached the Rescission Agreement. The Court will not detail all of the alleged wrongful acts; it will merely list those that are relevant to the motions to dismiss.

Prior to the merger, CalCon had originated certain loans related to a housing development in California. The loans were sold to an investor, but CalCon serviced the loans. After the merger, AMB continued to originate the loans and kept custody of the original documents. CalCon alleges that the Rescission Agreement made the documents the property of CalCon, and gave it the right to service the loans involved.

In April 2014, CalCon arranged to be the broker in the sale of the loans. CalCon alleges that it would "received valuable Mortgage Servicing Rights that would have generated income for [it]." CalCon asked AMB to return the original documents so that it could broker the sale, but AMB said that the documents had been destroyed. Without the original documents, CalCon could not be the broker in the sale of the loans.

CalCon alleges that AMB, Moran and Salti disparaged CalCon, Joshua Erskine and Shane Erskine. Specifically, as to Salti, CalCon alleges that he sent an email to a CalCon employee which stated "Josh [Erskine]'s offer of resolution was basically – FU [AMB] pay the 30k loss and Josh wants nothing to do w it bc [CalCon] is not a party to the deal." CalCon also claims that Moran sent an email to Joshua Erskine and another CalCon employee in which Moran said, "Maybe you should share [] [] that you were never an employee of AMB and as a consultant you weren't authorized to make concessions without my approval."

CalCon attributes many breaches to both AMB and Moran. Among those breaches, CalCon alleges that they failed to pay bonuses to CalCon; failed and refused to transfer West Coast

Operations leases; failed to cooperate and work in good faith in obtaining mortgage licenses; and failed to reimburse CalCon employees for business expenses.

In addition to the violation of the non-disparagement clause, the allegations against Salti include that he refused to approve any payments owed to CalCon employees; that he instructed AMB employees to disregard Joshua Erskine's directions regarding the West Coast Operations, which CalCon claims was part of the Rescission Agreement; and that he continued to use CalCon's name when AMB closed reverse mortgage loans during the Transition Period.

**B. Relevant Procedural History**

On October 1, 2013, AMB commenced this action in New York State Supreme Court, Nassau County, against CalCon, Arlene Baltazar ("Baltazar"), Mathew Dlugolenksi ("Dlugolenksi"), Joshua Erskine, Shane Erskine, Matthew Glynn ("Glynn"), Joseph Tako ("Tako"), Rosemere, John and Jane Does 1 through 100, John Doe Corporations 1 through 10, and John Doe Entities 1 through 10 (collectively, the "Defendants").

AMB asserted seven causes of action against the Defendants sounding in various theories of tort and breach of contract.

On October 28, 2013, the Defendants filed a timely notice of removal to federal court pursuant to 28 U.S.C. §§ 1441 and 1446(a) on the basis of diversity of citizenship.

On December 20, 2013, the Defendants filed separate answers to the complaint. In addition, CalCon filed counterclaims against AMB and third-party claims against Moran, Salti, and Max Kane ("Kane") — all of whom were employees of AMB and parties to the Rescission Agreement — and Roes 1 Through 50, which are unidentified partners or entities affiliated with AMB (collectively, the "Counterclaim Defendants"). Specifically, CalCon asserted two

counterclaims against the Counterclaim Defendants, namely, for breach of contract and tortious interference with contract.

AMB filed two amended complaints. The SAC was filed after the Court granted in part and denied in part AMB's motion to amend. The SAC was filed on February 15, 2016. AMB asserted five causes of action against some or all of the Defendants for breach of contract, breach of good faith and fair dealing, diversion of business opportunity, conversion, and tortious interference with a contract. Specifically as to Rosemere, it alleged causes of action for conversion and tortious interference with a contract.

CalCon filed amended counterclaims each time AMB amended its complaint. CalCon filed its third amended counterclaims in response to AMB's SAC on March 7, 2016. CalCon asserted five causes of action: one claim for breach of contract, under many theories, against AMB, Salti and Moran; a claim for tortious interference with a contract against Salti; another breach of contract claim against AMB and Moran; and negligence and conversion claims against AMB.

On March 18, 2016, Salti moved to dismiss CalCon's two claims against him.

On March 21, 2016, Defendant Rosemere moved for a judgment on the pleadings.

On March 28, 2016, Moran moved to dismiss CalCon's claims against him.

On March 28, 2016, AMB moved to dismiss CalCon's counterclaims for conversion and negligence against it.

## II. DISCUSSION

Because many of the motions concern the same causes of action, the Court will examine the claims by type instead of by claimant. First, the Court will review the applicable standards with which it must scrutinize those claims.

## A.  The Standards of Review

Of the four motions before the Court, three are motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6), and one is a motion for a judgment on the pleadings pursuant to Rule 12(c).

The standard for a motion for a judgment on the pleadings pursuant to Rule 12(c) is the same as a motion to dismiss a complaint pursuant to Rule 12(b)(6).  *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## B. As to the Conversion Claims

### 1. The Applicable Legal Principles

To establish a cause of action for conversion under New York law, a plaintiff must show (1) "legal ownership or an immediate superior right of possession to a specific identifiable thing" and (2) that the defendant "exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Pioneer Com. Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871, 883 (S.D.N.Y. 1991) (quoting *Independence Discount Corp. v. Bressner,* 47 A.D.2d 756, 365 N.Y.S.2d 44, 46 (N.Y. App. Div. 1975)).

#### a. As to Whether AMB has sufficiently plead a cause of action for conversion against Rosemere

Rosemere argues that AMB's conversion claim is insufficient and conclusory. AMB contends that it has alleged sufficient facts to plausibly find that Rosemere is liable for conversion. The Court agrees with Rosemere that AMB's allegations are conclusory and insufficient.

As stated above, AMB's allegations against Rosemere total three numbered paragraphs. The sum of the allegations in the three paragraphs is that Rosemere is a majority shareholder of CalCon, and that Rosemere knew of and condoned CalCon's interference with individuals seeking to close on the west coast loans. Viewing the facts in the light most favorable to AMB, and drawing all permissible inferences in its favor, the Court finds that AMB has failed to state a cause of action for conversion against Rosemere.

Although the Court must accept the factual allegations AMB has made as true, it need not accept its bare conclusions as true. *See Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (internal quotation marks and alterations omitted)). The Plaintiff's claims that Rosemere knew of and condoned CalCon's interference with AMB's business interests "are just the sort of threadbare recitals of the elements of a cause of action and conclusory statement that do not suffice to state a claim." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678)).

Here, the totality of AMB's allegations against Rosmere rest upon the claims that Rosmere "knew of and condoned" CalCon's interference with AMB's business relationships. The only fact that it provides in support of that claim is that Rosemere is the majority shareholder of CalCon. First, the Court notes that AMB also alleged that Joshua Erskine was the majority shareholder of CalCon. Second, even assuming that Rosemere is the majority shareholder of CalCon, this alone is insufficient to hold Rosemere liable for the actions of CalCon or the Erskines.

AMB has not alleged that Rosemere exercised dominion over any of AMB's property. Therefore, it has not sufficiently plead a cause of action for conversion against Rosemere.

Assuming that AMB hopes to proceed under a theory that Rosemere aided and abetted CalCon, that theory would also fail. First, merely because Rosemere knew of or condoned CalCon's allegedly tortious act does not mean that it contributed to those tortious acts in any way. In order to prove that a defendant aided and abetted another in committing a tort, the plaintiff must

show not only that there was a tort and that the defendant knew about it, but also that the defendant provided substantial assistance to commit the tort. *Lesavoy v. Lane,* 304 F. Supp. 2d 520, 526 (S.D.N.Y. 2004), *aff'd in part, vacated on other grounds in part,* 170 F. App'x 721 (2d Cir. 2006). AMB has not alleged that Rosemere provided any substantial assistance in the commission of the tort.

Second, it is a basic rule that shareholders are not held liable for the torts of the companies in which they hold stock. *Bigio*, 675 F.3d at 170–71 ("Under the law of New York [] [], the holder of an ownership interest in a corporation cannot be held liable on that basis for the corporation's torts"); *Billy v. Consol. Mach. Tool Corp.,* 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934, 941 (N.Y. 1980) ("As a general rule, the law treats corporations as having an existence separate and distinct from that of their shareholders and consequently, will not impose liability upon shareholders for the acts of the corporation.").

Accordingly, AMB has failed to allege sufficient facts for the Court to plausibly find that Rosemere is liable for conversion. Therefore, Rosemere's motion to dismiss the conversion cause of action based on the pleadings is granted.

### b. As to whether CalCon has sufficiently plead a cause of action for conversion against AMB

AMB argues that CalCon's conversion claim is insufficient, and duplicative of its breach of contract claim, and must therefore be dismissed. CalCon contends that the claims are not duplicative, because the breach that is the basis for the conversion claim is independent of the contract breach. The Court finds that CalCon's conversion claim is duplicative of its breach of contract claim.

To determine whether a conversion claim is duplicative of a breach of contract claim, courts look to the material facts upon which the claims are based and the damages that are sought.

*AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-cv-8832, 2007 WL 2962591, at *5 (S.D.N.Y. Oct. 10, 2007); *Command Cinema Corp. v. VCA Labs, Inc.,* 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) ("A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations."); *Alliance Group Servs., Inc. v. Grassi & Co.,* 406 F. Supp. 2d 157, 170 (D. Conn. 2005) ("Where plaintiffs have merely repeated . . . their breach of contract claims and called them conversions, the conversion claims must fail." (internal quotation marks omitted)); *see also Rolls-Royce Motor Cars, Inc. v. Schudroff,* 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (stating that a conversion claim will "be deemed redundant when damages are merely being sought for breach of contract") (internal quotation marks omitted); *All. Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157, 170 (D. Conn. 2005) ("An action for conversion cannot be validly maintained where damages are merely being sought for breach of contract.") (internal quotation marks omitted); *Reade v. SL Green Operating P'ship,* 817 N.Y.S.2d 230, 231 (N.Y. App. Div. 2006) ("[A] tort cause of action that is based upon the same facts underlying a contract claim will be dismissed as a mere duplication of the contract cause of action . . . .").

Here, CalCon's conversion claim is based on AMB's destruction of the original loan documents related to the housing development in California. Specifically, CalCon's "third counterclaim" against AMB, for conversion, states that "[b]y destroying the original loan documents, [AMB] exercised unauthorized dominion and control over the loan documents and, therefore, committed the tort of conversion with respect to such loan documents." (CalCon's Counterclaims at ¶ 59). Similarly, CalCon's "second counterclaim" for breach of contract against AMB and Moran states that "AMB [] was not able to locate the original loan documents and, through counsel, advised CalCon that the documents had been inadvertently destroyed. AMB's failure to return the original loan documents constituted a breach of the provision in the Rescission

Agreement that obligated it to return CalCon's assets."  (CalCon's Counterclaims at ¶¶ 53–54).  As to both claims, CalCon says that the amount of the damages would be proven at trial.

Both claims are based upon AMB's destruction of the original loan documents related to the California housing development.  Therefore, the factual bases for CalCon's conversion claim and one of its breach of contract claims are the same, and the Court finds that the conversion claim is duplicative.

Accordingly, AMB's motion to dismiss CalCon's conversion counterclaim pursuant to Rule 12(b)(6) is granted.

### C.  As to the Breach of Contract Claims

#### 1.  The Applicable Legal Principles

Under New York law, there are four elements to a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996).

##### a.  As to whether CalCon has sufficiently plead a cause of action for breach of contract against Salti for allegedly breaching the non-disparagement clause of the Rescission Agreement

Initially, the Court notes that in his motion to dismiss, Salti included emails that were not attached to CalCon's third party complaint against Salti.  The Court declines to consider those emails.

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and

relied in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Therefore, when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take that document into consideration in deciding a defendant's motion to dismiss, without converting the motion into one for summary judgment. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).

However, when a party submits additional evidence to the Court in connection with a motion to dismiss, beyond the scope of those allowed under *Brass* and *Cortec*, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R .Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(b); 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366.

In this case, the Court has decided to exclude the material that was attached to Salti's memorandum of law and decide the motion on the facts alleged in CalCon's counterclaims alone. Specifically, the series of emails that Salti attached to his memorandum of law is not of the character of those which a court may consider when deciding a motion to dismiss. CalCon did not rely on the email chain, nor is the chain incorporate into CalCon's counterclaims.

Salti argues that CalCon has not sufficiently plead a breach of contract against him because he is not clearly named in the cause of action; and the email that is the basis of their breach of contract claim does not make out a breach of contract based on a non-disparagement clause.

Salti's argument that he is not clearly named in the breach of contract claim is without merit. CalCon clearly stated in the claim at issue that "AMB and Moran (and Salti with respect to subparagraph (g) concerning disparagement) breached the Rescission Agreement," (CalCon's Counterclaims at ¶ 34), and then laid out allegations that were specific to Salti. Since the Court makes all inferences in favor of CalCon for the purposes of this motion, it is clear that CalCon named Salti as a defendant in its "first counterclaim for relief" for breach of contract.

CalCon alleged that the Rescission Agreement contained a non-disparagement section which provided that the parties, including Salti, "would not engage in any disparaging conduct, including but not limited to making professionally or personally disparaging negative and false statements, which are intended to or actually do damage to the good will of, or the business or personal reputations of, the other." (CalCon's Counterclaims at ¶ 32). Clearly, the Rescission Agreement imposed upon Salti a duty to not disparage CalCon or its principals who were signatories.

CalCon alleges that it "performed its obligations under the Rescission Agreement, except for those obligations CalCon was prevented or excused from performing." (CalCon Counterclaims at ¶ 33). Specifically, CalCon alleges that it worked to facilitate the transition of business.

CalCon further alleges that Salti breached the non-disparagement clause of the contract by emailing the "head" of CalCon's San Francisco office and stating that "[Joshua Erskine]'s offer of resolution was basically - FU, you guys (AMB) pay the $30K loss and Josh wants nothing to do w it bc One Trust Home loans is not a party to the deal." (CalCon's Counterclaims at ¶ 34(g)). Accepting CalCon's allegations as true, the Court finds that this is plausibly a disparaging comment, and one that plausibly breached the Rescission Agreement's non-disparagement clause.

As to damages, CalCon states that it was damaged by Salti's statement, and intends to prove the amount at trial. The Court finds that this allegation is sufficient at the pleadings stage. *See, e.g., Deutsche Bank Nat. Trust Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 97 F. Supp. 3d 548, 556 (S.D.N.Y. 2015) (finding that seeking damages "in an amount to be proven at trial" was sufficient at the pleadings stage); suffered damages in an amount to be proven at trial *Exxon Mobil Corp. v. Tredegar Corp.*, 891 F. Supp. 2d 559, 566 (S.D.N.Y. 2012) (same); *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 305 (S.D.N.Y. 2011) (same).

Therefore, CalCon has sufficiently plead a breach of contract claim against Salti based on the Rescission Agreement's non-disparagement clause.

The cases cited by Salti are inapposite because in each of those cases, the plaintiff failed to allege who made the disparaging statement, the substance of the statement or the person to whom the statement was made. *See, e.g., N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, No. 12 CIV. 3584 JCF, 2013 WL 1500333, at *9 (S.D.N.Y. Apr. 12, 2013) (dismissing breach of non-disparagement clause claim where the complaint failed to allege specifics, including the substance of the disparaging communication, who made the statements, when the statements were made, to whom the statements were communicated, and the mode of communication); *BDCM Fund Adviser, L.L.C. v. Zenni,* 103 A.D.3d 475, 477-78, 962 N.Y.S.2d 11 (N.Y. App. Div. 2013) (affirming dismissal of breach of non-disparagement provision cause of action because the complaint failed to specify disparaging statements allegedly made by the defendants).

Here, CalCon alleged that Salti sent an email to the head of the CalCon San Francisco office, and included the alleged disparaging comment. CalCon has plausibly alleged a breach of contract claim against Salti.

Accordingly, Salti's motion to dismiss CalCon's breach of contract claim against him pursuant to Rule 12(b)(6) is denied.

**b. As to whether CalCon has sufficiently plead a cause of action for breach of contract against Moran for breaching the non-disparagement clause of the Rescission Agreement**

Moran argues that CalCon has not sufficiently plead a cause of action for breach of contract because the email he sent that is the basis for CalCon's claim was true.

In support of his motion to dismiss, Moran attached a copy of the purported Rescission Agreement. However, unlike the materials supplied by Salti in his motion to dismiss, the Court will take the Rescission Agreement into account because it was clearly "in [CalCon's] possession [and] . . . [CalCon] had knowledge [of it] and relied [on it] in bringing suit." *Brass*, 987 F.2d 142, 150 (2d Cir. 1993). The Court notes that not only is it clear that CalCon relied on the Rescission Agreement when it filed its counterclaims, but CalCon supplied the Rescission Agreement as an attachment to its memorandum in opposition to Salti's motion to dismiss.

First, Moran argues that CalCon's breach of the non-disparagement clause should be treated as a claim for defamation. Moran does not offer any case law in support of his proposition that a breach of contract claim based upon a non-disparagement clause is the same as a defamation claim. CalCon's claim is for breach of contract and the Court will analyze it as such.

As stated above in the analysis of Salti's motion to dismiss, the Court finds that CalCon has sufficiently alleged that there was an agreement between Moran and CalCon; that the agreement contained a non-disparagement provision; and that CalCon adequately performed under the contract. The non-disparagement clause of the contract is the same as that quoted in CalCon's Counterclaims: "The parties [including Salti and Kane] represent . . . that they will not engage in any disparaging conduct, including but not limited to making professionally or personally

disparaging negative and false statements, which are intended to or actually do damage to the good will of, or the business or personal reputation of, the other." (Rescission Agreement at XI(a)).

As to the breach of the non-disparagement provision, CalCon alleges that Moran sent an email to Joshua Erskine and the head of CalCon's San Francisco office on June 26, 2013 in which he said "[m]aybe you [Erskine] should share with Chris that you were never an employee of AMB and as a consultant you weren't authorized to make concessions without my approval." (CalCon's Counterclaims at ¶ 34(g)). Moran argues that this statement was neither false nor negative. The Rescission Agreement states that Joshua Erskine did enter into an employment agreement with AMB in December 2011, and that he would retain a consulting role during the transition period. (Rescission Agreement at 1, IV(B)). However, the Rescission Agreement does not limit disparaging claims to those that are false. Nevertheless, CalCon alleges that the statement was negative, and that the breach caused damages. With the limited facts before the Court, and construing them in CalCon's favor, the Court cannot find that the email was clearly not negative.

Accepting CalCon's allegations as true, the Court finds that CalCon has plausibly alleged a claim for breach of contract against Moran based on a violation of the non-disparagement clause. Accordingly, Moran's motion to dismiss CalCon's breach of contract claim based on a violation of the non-disparagement clause is denied.

**c. As to whether CalCon has sufficiently plead a cause of action for breach of contract against Moran for Failure to Pay Salary, Bonuses, and Expenses, and for Failure to Transfer Assets**

Relying on the Rescission Agreement attached to his memorandum, Moran argues that he cannot be held liable for various other breaches because those portions of the contract did not obligate him to perform. CalCon contends in opposition that Moran is bound by those portions of the contract. The Court finds that dismissal is improper at this juncture.

CalCon's "first counterclaim" for breach of contract is alleged against both AMB and Moran. Paragraph 34 of CalCon's complaint enumerates the many ways in which AMB and Moran are alleged to have breached the Rescission Agreement. Specifically, as to the payments of salary, bonuses and expenses, CalCon alleged that AMB was obligated to pay bonuses, salary and expenses. (CalCon's Counterclaims at ¶ 28). As to the transfer of certain leases, CalCon alleged that AMB was obligated to transfer the leases. (*Id.* at ¶ 27). Although there are several references to Moran in those paragraphs, CalCon does not allege that Moran was specifically obligated to perform those tasks. The sections in the Rescission Agreement that dictate payments and transfers mention Moran but do not appear to obligate him to do so.

However, CalCon now argues that Moran was obligated to perform those tasks because 1) he signed the contract in his personal capacity and 2) as an officer of AMB, he can be held personally liable for the company's contractual obligations. The signature page of the Rescission Agreement has seven signatures. Two individuals signed twice: Moran signed as President of AMB and "Individually;" and Joshua Erskine signed twice: as President of CalCon and "Individually." Salti, Kane and Shane Erskine all signed "Individually."

"A corporate officer acting in his official capacity is not personally liable for the corporation's breach of a contract." *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 486 (S.D.N.Y. 2010) (citing *Value Time, Inc. v. Windsor Toys, Inc.,* 709 F. Supp. 436, 438 (S.D.N.Y. 1989)). However, a principal can be held personally liable where "he or she purports to personally bind him or herself." *Maranga v. McDonald & T. Corp.,* 8 A.D.3d 351, 352, 777 N.Y.S.2d 732, 733 (N.Y. App. Div. 2004).

To determine whether an agent intends to be personally bound, courts of the Second Circuit look to five factors set forth in *Cement and Concrete Workers District Council Welfare Fund v.*

*Lollo,* 35 F.3d 29 (2d Cir. 1994).  These factors include: "[1] the length of the contract, [2] the location of the liability provision(s) in relation to the signature line, [3] the presence of the signatory's name in the agreement itself, [4] the nature of the negotiations leading to the contract, and [5] the signatory's role in the corporation."  *Id.* at 35.

Here, the Rescission Agreement is twenty pages long; the liability provisions appear two pages before the signature page; and Moran signed in his role as President and individually.  "The Second Circuit also has suggested examining the structure and content of the signature lines to determine whether the agent intended to sign the contract in his official capacity only."  *Integrated Mktg. & Promotional Sols., Inc. v. JEC Nutrition, LLC,* No. 06-cv-5640, 2006 WL 3627753, at *3 (S.D.N.Y. Dec. 12, 2006) (citing *Lerner v. Amalgamated Clothing & Textile Workers Union,* 938 F.2d 2, 5 (2d Cir. 1991).  "[W]here individual responsibility is demanded the nearly universal practice is that the officer signs twice-once as an officer and again as an individual."  *Consac Indus., Inc. v. LDZ Comercio Importacao E Exportacao LTDA,* No. 01-cv-3857, 2002 WL 31094855, at *3 (E.D.N.Y. Aug. 29, 2002) (Spatt, J.) (quoting *Saltzman Sign Co. v. Beck,* 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55, 176 N.E.2d 74 (N.Y. 1961)).

Applying these principles, the Court finds that Moran is not entitled to dismissal at this juncture.  It appears that Moran, along with the other corporate officers, sought to bind himself individually and hold himself personally liable.  The Court is of this view because both presidents of both corporations signed in their official and individual capacities.  The parties chose not to sign only as officers of their representative corporations, but as individuals.  The Rescission Agreement's indemnification provision states that AMB and Moran would assume liability and would indemnify CalCon and the Erskines for certain causes of action.  (Rescission Agreement VII(f)).

Accordingly, Moran's motion to dismiss CalCon's claim for breach of contract based on Moran's failure to pay monies or transfer assets pursuant to Rule 12(b)(6) is denied.

## D.  As to the Tortious Interference with a Contract Claims

### 1.  The Applicable Legal Principles

To plead a claim of tortious interference with a contract under New York law, a plaintiff must allege "(1) the existence of a valid contract between a third party and plaintiff, (2) that defendant had knowledge of that contract, (3) that defendant intentionally procured a breach, and (4) damages."  *Finley v. Giacobbe,* 79 F.3d 1285, 1294 (2d Cir. 1996); *see also Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97, 99 (N.Y. 1956).

#### a.  As to Whether AMB has sufficiently plead a cause of action for tortious interference with a contract against Rosemere

The Court's analysis as to whether AMB sufficiently plead a cause of action for tortious interference is the same as its analysis concerning AMB's conversion claim.  As stated above, AMB's allegations against Rosemere are conclusory and insufficient.  Specifically, as to the tortious interference claim, AMB has failed to allege that Rosemere intentionally procured a breach.  Furthermore, if AMB wished to proceed under an aiding and abetting theory for this claim, that would fail as well.  AMB has failed to allege that Rosemere substantially aided CalCon in tortiously interfering with AMB's contracts.  As a shareholder, Rosemere cannot be held liable for the torts of the company in which it holds stock.

Accordingly, Rosemere's motion to dismiss AMB's tortious interference claim is granted. All claims against Rosemere are therefore dismissed.

**b. As to whether CalCon has sufficiently plead a cause of action for tortious interference with a contract against Salti**

Salti argues that CalCon's tortious interference with a contract claim against him is vague and conclusory; lacks specificity; and is devoid of factual allegations. CalCon contends in opposition that it has plead the cause of action with the required specificity. The Court finds that because Salti was alleged to have induced a breach while acting within the scope of his employment, CalCon's claim cannot survive.

As noted above, Salti was only a party to certain portions of the Rescission Agreement. Namely, he was a party to the portions governing non-disparagement, mutual release and indemnification. However, those portions, as well as the remainder of the Rescission Agreement did bind AMB, CalCon, Moran and the Erskines. Therefore, a valid contract existed between CalCon and "third parties," specifically AMB and Moran.

Salti clearly knew about the existence of the Rescission Agreement because he was a party to certain portions.

As to whether Salti intentionally procured a breach of that contract, CalCon alleges that:

> Salti . . . instruct[ed] AMB employees to deny and or ignore Joshua Erskine's directions regarding customary and reasonable concessions and extensions necessary to permit [w]est [c]oast [l]oans to close during the Transition Period even though . . . Erskine had absolute discretion and authority in those and other matters . . .; delayed AMB from ceasing to use the 'Calcon Mutual' in Las Vegas and elsewhere name so that AMB could continue to close reverse mortgage loans during the and after the Transition Period; Salti refused to approve the payment of retention bonuses to West Coast employees that AMB was obligated to pay; directed AMB's Controller, Yovani Campos, to refuse to pay reasonable and customary expenses incurred by West Coast employees; directed AMB's Controller [] []: to 1) improperly inflate the expenses for which AMB requested reimbursement, 2) fail to provide backup documents for those expenses and 3) threaten to shut down the West Coast business of the inflated expenses were not paid, thereby coercing CalCon to make higher expense reimbursements than should have been paid.

(CalCon's Counterclaims at ¶¶41a-e).

These facts, taken as true, may establish an intentional procurement of a breach. However, under New York law, an officer "of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken." *Murtha v. Yonkers Child Care Ass'n, Inc.*, 45 N.Y.2d 913, 915, 383 N.E.2d 865, 866 (N.Y. 1978) (internal citations and quotation marks omitted). In the *Murtha* case, the New York Court of Appeals went on to say that "[a] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer and did not commit independent torts or predatory acts directed at another." *Id.* (internal alterations, citations and quotation marks omitted); *see also Kriss v. Bayrock Grp. LLC*, No. 10-cv-3959, 2016 WL 7046816, at *22 (S.D.N.Y. Dec. 2, 2016) ("It is well settled that an agent cannot be held liable for inducing its principal to breach a contract with a third person, at least where it is acting on behalf of its principal and within the scope of its authority."); *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 298 (E.D.N.Y. 2012) ("[F]or an agent of a party to the contract to qualify as a 'third party,' the plaintiff must demonstrate that the agent acted outside the scope of his authority . . . .").

Here, CalCon alleges that Salti, acting as an agent of AMB, induced AMB to breach its contract with CalCon. It is clear from the law that this type of cause of action cannot stand. CalCon has not alleged that Salti committed any "independent torts or predatory acts," *Murtha* 45 N.Y.2d at 915, or that he "acted outside the scope of his authority." *Friedman*, 848 F. Supp. 2d at 298. Instead, CalCon alleged that Salti, while acting within the scope of his employment, caused his corporation to breach its contract.

Therefore, Salti cannot be held liable for tortious interference with a contract where he allegedly induced his company to breach a contract while he was acting within the scope of his employment. Accordingly, Salti's motion to dismiss CalCon's claim against him for tortious interference with a contract is granted.

## E.  As to the Negligence Claims

### 1.  The Applicable Legal Principles

Under New York law, to establish a claim of negligence, a plaintiff must allege that the defendant owed him a duty; that the defendant breached that duty; that there was an injury; and that the defendant's breach caused that injury. *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).

#### a.  As to whether CalCon has sufficiently plead a cause of action for negligence against AMB

AMB contends that CalCon's negligence claim is insufficient and should be barred by the economic loss doctrine. In opposition, CalCon argues that it has sufficiently plead a claim for negligence and that the economic loss doctrine is inapplicable because it alleged that property was destroyed.

The general rule under New York law is that economic loss is not recoverable under a theory of negligence. *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 18 (2d Cir. 2000) (citing *County of Suffolk v. Long Island Lighting Co.,* 728 F.2d 52, 62 (2d Cir. 1984) ("New York law holds that a negligence action seeking recovery for economic loss will not lie.")). However, CalCon has alleged that its loss related to property damage. Namely, that AMB destroyed the original loan documents related to the California housing development. Therefore, CalCon's negligence claim does not seek to remedy a loss that is purely economic.

However, although AMB argued that CalCon's negligence claim should be dismissed because of the economic loss doctrine, the substance of its argument relates to whether the claims are duplicative. (*See* AMB's Mem. of Law at 8, ECF No. 138 ("The rule shields defendants from recovery of damages that actually lie in the nature of breach of contract as opposed to tort." (quoting *Hydro Inv'rs*, 227 F.3d at 16)). As stated above, to determine whether a tort claim is duplicative of a breach of contract claim, courts look to the material facts upon which the claims are based and the damages that are sought. *Reade*, 817 N.Y.S.2d at 231; *see also MVP Health Plan, Inc. v. OptumInsight, Inc.*, No. 1:13-CV-1578, 2014 WL 5475287, at *2 (N.D.N.Y. Oct. 29, 2014) ("Generally, a tort cause of action that is based upon the same facts underlying a contract claim will be dismissed as a mere duplication of the contract cause of action particularly where . . . both seek identical damages.")

As the Second Circuit said in *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012):

> Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated. Such a legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract. Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct. If, however, the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative.

*Id.* at 58 (internal citations and quotation marks omitted).

Just as CalCon's conversion claim is based completely upon AMB's contractual obligation to provide CalCon with the original loan documents, so too is CalCon's negligence claim. CalCon has included the specific portions of the contract relating to the original loan documents in its counterclaims. CalCon states that Schedule A of the Rescission Agreement allegedly contained

the following clause: "The assets to be transferred shall be those utilized in the operation of the West Coast Business, including, without limitation[:] contract rights, contracts, and all other properties, assets and rights used in connection with the West Coast Business." (CalCon's Counterclaims at ¶ 48) (internal alterations omitted). CalCon further alleges that the Rescission Agreement, the contract in question, created AMB's duty to return the loan documents: "Pursuant to the Rescission Agreement, . . . the documents related to the servicing[] were considered property of CalCon. . . . AMB's failure to return the original loan documents constituted a breach of the provision in the Rescission Agreement that obligated it to return CalCon's assets." (*Id.* at ¶¶ 51, 54). Therefore, AMB did not have a legal duty independent of the contract to return the original loan documents, because, as CalCon alleges, the duty to return the original loan documents to CalCon was a duty created by the contract.

Accordingly, AMB's motion to dismiss CalCon's counterclaim for negligence against AMB pursuant to Rule 12(b)(6) is granted.

### III. CONCLUSION

For the foregoing reasons, the Court: grants Rosemere's motion for a judgment pursuant to Rule 12(c) on the pleadings in its entirety; grants AMB's motion to dismiss CalCon's counterclaims for conversion and negligence pursuant to Rule 12(b)(6); denies Salti's motion to dismiss CalCon's claim for breach of contract, but grants his motion to dismiss CalCon's tortious interference with a contract against him pursuant to Rule 12(b)(6); and denies Moran's motion to dismiss CalCon's breach of contract claims based on Moran's alleged violation of the non-disparagement clause and alleged failure to pay monies and transfer assets pursuant to Rule 12(b)(6). Therefore, the following causes of action are still viable:

1. AMB's claims against all Defendants except Rosemere;

2. CalCon's counterclaims against AMB for breach of contract;

3. CalCon's breach of contract claims against Moran

4. CalCon's breach of contract claims against Salti

Accordingly, the Court directs the following: that the Clerk of the Court terminate Rosemere as a party to this action; and that the case be referred to Magistrate Judge A. Kathleen Tomlinson for the remainder of discovery. The Clerk of the Court is further respectfully directed to amend the official caption as follows:

```
------------------------------------------------------------------x
ASSOCIATED MORTGAGE BANKERS, INC.,

                        Plaintiff,

        -against-

CALCON MUTUAL MORTGAGE LLC, doing
business as One Trust Home Loans, ARLENE
BALTAZAR, MATHEW DLUGOLENSKI,
JOSHUA ERSKINE, SHANE ERSKINE,
MATHEW GLYNN, JOSEPH TAKO,
JOHN AND JANE DOES 1 THROUGH 100,
JOHN DOE CORPORATIONS 1 THROUGH 10,
and JOHN DOE ENTITIES 1 THROUGH 10,

        Defendants,
------------------------------------------------------------------x
CALCON MUTUAL MORTGAGE LLC d/b/a
ONE TRUST HOME LOANS,

                        Counterclaimant,

        -against-

ASSOCIATED MORTGAGE BANKERS, INC.,
DONALD MORAN, ADAM SALTI, MAX
KANE, and ROES 1 THROUGH 50,

                        Third Party Defendants.
------------------------------------------------------------------x
```

It is **SO ORDERED:**

Dated: Central Islip, New York

January 8, 2017

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge